The opinion of the Court was delivered by
Wardlaw, Ch.
Thomas E. Davis died intestate in February, *106 1835, possessed at bis death of some estate, and leaving as the distributees of this estate four brothers, one sister, and four children of a sister, Martha Presley, who pre-deceased him.— Three of these children, on March 30, 1853, cited Peter Davis, administrator of the intestate, to account before the Ordinary for his administration of the estate; and afterwards they obtained from the Ordinary a decree in their behalf for a specific sum of money. From this decree the administrator appealed to the Court of Equity; and the Chancellor on Circuit after a hearing ordered, that “ the appeal be dismissed, and that the decree of the Ordinary be confirmed and become the decree of this Court.” The administrator now brings his case before the Court of Appeals on the grounds presented to the Circuit Court, with an additional ground.
In the first of these grounds it is assumed that the estate of Thomas E. Davis was acquired under the will of his father, James Davis ; and it is insisted that, under the ninth clause of this will, the legacy to the intestate was limited over, on the contingency which has happened of his dying without issue, to the children of testator surviving that event in exclusion of grandchildren. No proof is reported to us that the estate of the intestate was thus acquired ; but as the Chancellor thinks he may have decided the case on concession of the appellant’s statement in this particular, we too will admit the hypothesis for the purposes of this appeal.
James Davis in the first clause of his will directs that his debts be paid; in the seven following clauses gives to his six children (including Martha Presley, who was living at the execution of the will and at the death of the testator,) and to a grandchild, each one shilling in addition to advancements of specified values; and in the ninth clause makes this further’ disposition: “ My will is that the residue, if any, be equally divided among all the aforesaid children, and those who have received a greater portion than others of my children must pay back unto those that lack till their portions are made equal.— *107 Also if any of the aforesaid children should die or make their exit without lawful issue, then their portions are to be equally divided among the remainder of the aforesaid children.”
The appellant argues that the limitation over here is equivalent to a bequest to the children of testator surviving any child who died without issue; and that grand children cannot take as children where there are persons éxactly fulfilling the description of children. The latter proposition is sustained by authority, (Ruff vs. Rutherford, Bail. Eq. 7; Mathis vs. Hammond, 6 Rich. Eq. 121, 398); the former cannot be conceded.
The first obstacle to the construction of this clause for which appellant contends, is, that the epoch to which the supposed words of survivorship refer may not be the death of the first takers of the estate. It is the established doctrine that, wherever the gift takes effect in possession immediately on testator’s death, words of survivor-ship refer to the date of testator’s death and are intended to provide for the contingency of the death of the objects of his bounty in his lifetime; unless some other point of time be indicated by the will. If the enjoyment be postponed by the interposition of a particular interest such as a life estate, or by fixing a future period for division such as the attainment of the legatee to full age, then words of survivor-ship more naturally relate to the period of division and enjoyment. 2 Jarm. Wills, 450 (632); Schoppert vs. Gillam, 6 Rich. Eq. 83; Home vs. Pillaus, 8 C. E. C. In the present ease the whole estate of testator, except seven shillings, is disposed of by the clause in question, with manifest purpose of immediate enjoyment by the legatees, and without any intimation in the context that the testator meant to provide against the death of his legatees occurring after his own. We adjudge that the death of the testator is the period to which this clause of the will relates.
Granted that the death of the children severally is the date to which the terms of this clause relate, the appellant next encounters difficulty in maintaining that there are any terms in *108 the clause equivalent to survivors, and sufficient to avoid the rule against perpetuities. A limitation over after the death of the first taker without issue is void for remoteness, as the extinction of issue may occur in a remote generation; and there must be something in the bequest or context to restrict the phrase of death without issue to lives in being and twenty-one years afterwards. It is settled after much controversy that the term survivors has this restrictive operation, where benefit to persons in life not transmissible to heirs and representatives is plainly intended. The vice of remoteness is not escaped where the gift over is to persons in being by name or to survivors and their heirs and representatives ; for in these cases the heirs and representatives would be entitled to take at whatever time the issue of the first taker might fail. Massey vs. Hudson, 2 Meri. 130; Stevens vs. Patterson, Bail. Eq. 42.— In many cases where the very term of survivors has been used, it has been interpreted as synonymous with others, and consequently insufficient to tie up the generality of the phrase of death without issue. Here the words are “ the remainder of the aforesaid children ” which are not equivalent to the survivors of my children, but naturally mean the rest, the others of my children. In Buck vs. Cox, 5 Rich. 604, where a testator bequeathed certain personal estate to be equally divided between his sons Harmon and Peter, and further provided “ if either of my two sons should die without lawful issue, that my other son shall have his part of my property,” the Court of Errors unanimously decided that the limitation-over was void for remoteness. This case affirmed the previous case of Shephard vs. Shephard, 2 Rich. Eq. 142, where there was a bequest to three children of testator by name, but in case of the death of either his share to go to the others, to be equally divided between them; and the gift over was held to be void for remoteness, and identical with the case of a limitation over to B if A should die without issue. Again, to adopt the construction which the appellant urges would be attended with the consequence *109 of disinheriting the issue of testator’s daughter, Martha Presley ; and Courts in the interpretation of instruments of gift seek to avoid such a consequence, and adopt a construction attended with it only when compelled by established rules and principles. Packham vs. Gregory, 30 E. C. R. 396; Evans vs. Godbold, (6 Rich. Eq. 26). In the present instance, there is no authority which authorizes, much less compels, us to hold “ remainder of the aforesaid children ” as synonymous with survivors of the said children. Shaw vs. Monefelt, (6 Rich. Eq. 240).
The second ground of appeal is that the Ordinary should have allowed credit to the administrator for the sums expended by the father of the complaining distributees in their maintenance, because their father, Lewis Presley, was not of ability to maintain them without the employment of their shares for this end. There is no proof of any fact upon which this proposition Could be plausibly rested. It does not appear that Lewis Presley was not of ability to maintain his children, nor that he sets up any claim for their maintenance; nor that he received their shares or made any settlement with the administrator in their behalf. The whole sum of the evidence is, that he was a purchaser at the administrator’s sale probably to the extent of his childrens’ share, and that like other purchasers he gave his note with sureties for his purchases, and that this note has not been paid. But if the father were now claiming for the past maintenance of his children his claim would be rejected. A father is bound to maintain his infant children from his own estate, however ample may be their separate resources, and no allowance for this purpose will be made to him out of their estate. If he be unable to maintain them, the Court may order maintenance out of their own property, upon his petition for this purpose ; the first point of inquiry being his ability to maintain them suitably from his own estate. But his past maintenance of them creates no debt from them to him. The doctrine and practice of the Court on this point were first ex *110 plicitly declared by Lord Thurlow, and although somewhat discredited by Lord Eldon on a mistaken supposition of change of procedure, have been firmly re-established by recent decisions. Lord Cottenham, in a recent case, (ex parte Bond, 2 Myl. & K. 439, 8 C. E. C. R. 75,) says: “ To allow for past maintenance, and to treat as a debt the expenditure which the law imposed upon the father as a duty, would be to act against a settled rule of the Court. The Court might if a special case were made direct an inquiry, &c.” Simon vs. Barber, Taml. 22, 5 C. E. C. R. 264; Hughes vs. Hughes, 1 Bro. C. C. 387; Hill vs. Chapman, 2 Bro. C. C 231; Andrews vs. Partington, 3 Bro. C. C. 60; McPhers. on Inf. 145, 219. Here it is not the father but an administrator without privity with him, who sets up this untenable claim.
The third ground of appeal is, that the applicants to the Ordinary for account were barred by the statute of limitations. The eldest of them was near thirty years of age, the second about twenty-five and the third about twenty-three when the proceedings for account were instituted. The statute is inapplicable to technical and continuing trusts, as in this case between an administrator and distributees; and there is no proof here of any act, such as a settlement of his accounts, by which the administrator purported to execute his trust, throw off his fiduciary character, and place himself in the position of a stranger to the beneficiarieá. Brockington vs. Camlin, 4 Strob. Eq. 189. This ground is not sustained.
In addition to these grounds which were presented to the Circuit Court, the appellant further insists here, that the Court of Equity has no authority under the Act of 1839, to enforce by its process of execution the decree of the Ordinary. Whatever may be the proper procedure for executing the judgment of the Ordinary, and without meaning to disparage the right of the distributees to the processes of this Court against the administrator, it is a sufficient reply to this ground of appeal, that the Circuit decree does not prescribe any particular mode *111 of execution, and leaves tbe distributees to proceed as they may be advised.
The only error in the Ordinary’s decree as presented to us, which I perceive, is one in favor of appellant in allowing in his behalf one-third of the share of the children of Martha Presley to their father Lewis Presley; whereas as their mother predeceased her intestate brother, the children were the dis-tributees under the statute in exclusion of the father.
It is ordered and decreed that the Circuit decree be affirmed, and that the appeal be dismissed.
Johnston, Dunkin and Daiigan, CO.s concurred.

Decree affirmed.